UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| EMA FINANCIAL, LLC, a Delaware Limited Liability Company, | : | Case No.: |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT** |
| - against - | : | |
| | : | |
| APPTECH CORP., a Wyoming Corporation, | : | |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff, EMA Financial, LLC ("EMA" or "plaintiff"), by its undersigned attorneys, for its complaint, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for specific performance, a permanent injunction, breach of contract, and related relief arising as the result of defendants' conduct in connection with certain agreements to purchase securities, a related convertible note agreement and a warrant agreement. After entering into negotiated, arms-length agreements, for which defendant Apptech Corp. ("APCX or "defendant") received valuable consideration, APCX breached the agreements in numerous ways, including, *inter alia*, by: (i) failing to honor EMA's notices of conversion, and, (ii) failing to establish, maintain and increase a share reserve.  Accordingly, plaintiff seeks the relief set forth herein.

## PARTIES

2.      Plaintiff EMA Financial, LLC ("EMA" or "plaintiff") is a limited liability company duly organized under the laws of the State of Delaware and having a place of business located at 40 Wall Street, New York, New York.

3.      The members of EMA reside in New York and Delaware.

4.      For purposes of diversity, EMA is a citizen of New York and Delaware.

5.      Upon information and belief, Defendant Apptech Corp ("APCX or "defendant") is a corporation organized and existing under the laws of the State of Wyoming having its principal place of business located at 5876 Owens Ave, Suite 100, Carlsbad, CA 92008. For purposes of diversity, APCX is a citizen of Wyoming and California.

6.      APCX is a publicly traded company, trading under the symbol "APCX."

7.      No member of EMA is a citizen of Wyoming or California.

8.      There is therefore complete diversity of citizenship.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.      This Court has supplemental jurisdiction of Plaintiff's various state law claims pursuant to 28 U.S.C. Section 1367(a).

11.      Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject to this action is situated.

12.      Additionally, in the relevant agreements, defendant consented to jurisdiction and venue in the Southern District of New York.

## FACT COMMON TO ALL CLAIMS FOR RELIEF

13.      On or about November 18, 2020 after arm's-length negotiations, APCX executed a Securities Purchase Agreement (the "SPA") and issued a Convertible Note to EMA (the "Note")

in the amount of $300,000.00.  A true and correct copy of the Note is attached hereto as Exhibit A.   A true and correct copy of the SPA is annexed as Exhibit B.

14.     On that same date, APCX executed a Common Stock Purchase Warrant (the "Warrant", together with the Note, SPA, and related documents, the "Agreements") providing, inter alia, for the purchase of up to 200,000 shares of APCX.  A true and correct copy of the Warrant is annexed as Exhibit C.

15.     The Note provides that EMA, at any time after the Issue Date of the Note, has the right to convert all or part of the Note into shares of APCX common stock (the "Common Stock"). Specifically, §1.1 of the Note provides in pertinent part:

> The Holder shall have the right, in its sole and absolute discretion, at any time and from time to time to convert all or any part of the outstanding amount due under this Note… into fully paid and non-assessable shares of Common Stock.

Ex. A at 1.1.

16.     Likewise, 1.4(a) of the Note provides that: "Subject to Section 1.1, this Note may be converted by the Holder in whole or in part at any time and from time to time after the Issue Date, by submitting to the Borrower or Borrower's transfer agent a Notice of Conversion…"

17.     As §1.2(a) of the Note dictates: "The conversion price hereunder (the "Conversion Price") per share shall equal one dollar ($1) for the one hundred eighty (180) days immediately following the Issue Date, and thereafter shall equal the lower of: (i) the lowest closing price of the Common Stock during the preceding twenty-five (25) Trading Day period ending on the latest complete Trading Day prior to the Issue Date of this Note or (ii) 75% of the lowest trading price for the Common Stock on the Principal Market during the twenty five (25) consecutive Trading Days including and immediately preceding the Conversion Date..."

18.     Further, under §1.4(d) of the Note: "Upon receipt by the Borrower from the Holder of a facsimile transmission or e-mail (or other reasonable means of communication) of a Notice of Conversion meeting the requirements for conversion as provided in this Section 1.4, the Borrower shall issue and deliver or cause to be issued and delivered to or upon the order of the Holder certificates for the Common Stock issuable upon such conversion within one business day after such receipt or such an event (the "Deadline") (and, solely in the case of conversion of the entire unpaid principal amount hereof, surrender of this Note) in accordance with the terms hereof and the Purchase Agreement."

19.     In order to ensure that sufficient shares are available for conversion, §1.3 of the Note provides that:

> The Borrower covenants that the Borrower will at all times while this Note is outstanding reserve from its authorized and unissued Common Stock a sufficient number of shares, free from preemptive rights, to provide for the issuance of Common Stock upon the full conversion or adjustment of this Note. The Borrower is required at all times to have authorized and reserved five (5) times the number of shares that is actually issuable upon full conversion or adjustment of this Note (based on the Conversion Price of the Notes in effect from time to time)(the "Reserved Amount"). Initially, the Company will instruct the Transfer Agent to reserve 1,801,000 shares of common stock in the name of the Holder for issuance upon conversion hereof. The Borrower represents that upon issuance, such shares will be duly and validly issued, fully paid and non-assessable.

20.     In order to ensure that EMA at all times has shares reserved in connection with the outstanding Note §5 of the SPA states that:

> In the event that the Company proposes to replace its transfer agent, the Company shall provide, prior to the effective date of such replacement a fully executed Irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to this Agreement and the Securities (including but not limited to the provision to irrevocably reserve shares of Common Stock in the Reserved Amount (as defined in the Note) signed by the successor transfer agent to Company and the Company… The Company warrants that: (i) no instruction other than the Irrevocable Transfer Agent Instructions referred to in this Section 5, and stop transfer instructions to give effect to Section 2(f) hereof (in the case of the Conversion Shares, prior to registration of the Conversion Shares under the 1933 Act or the date on which the

Conversion Shares may be sold pursuant to Rule 144 without any restriction as to the number of Securities as of a particular date that can then be immediately sold), will  be given by the Company to its transfer agent and that the Securities shall otherwise be freely transferable on the books and records of the Company as and to the extent provided in this Agreement and the Note; (ii) it will not direct its transfer agent not to transfer or delay, impair, and/or hinder its transfer agent in transferring (or issuing)(electronically or in certificated form) any certificate for Conversion Shares to be issued to the Purchaser upon conversion of or otherwise pursuant to the Note as and when required by the Note and this Agreement; and (iii) it will not fail to remove (or direct its transfer agent not to remove or impair, delay, and/or hinder its transfer agent from removing) any restrictive legend (or to withdraw any stop transfer instructions in respect thereof) on any certificate for any Conversion Shares issued to the Purchaser upon conversion of or otherwise pursuant to the Note as and when required by the Note and this Agreement

21.      Section 2 of the Warrant provides the mechanism for its exercise.  Among other things, Section 2(a) provides as follows:

Exercise of Warrant. Exercise of the purchase rights represented by this Warrant may be made, in whole or in part, at any time and from time to time on or after the Issue Date and on or before the Expiration

22.      Section 2(b) of the Warrant provides as follows:

Date by delivery to the Company (or such other office or agency of the Company as it may designate by notice in writing to the registered Holder at the address of the Holder appearing on the books of the Company) of a duly executed facsimile copy of the Notice of Exercise Form annexed hereto ("Notice of Exercise") (which delivery may be made in any manner set forth in the Purchase Agreement, including without limitation by email)…

23.      Section 2(f)(i) of the Warrant requires that the shares be delivered within 3 Trading Days of the Notice of Exercise.

24.      Section 5(d) of the warrant provides as follows:

The Company covenants that during the from the Issue Date herein it will reserve from its authorized and unissued Common Stock, the number of shares of Common Stock equal to 500% of the total shares of Common Stock issuable  upon the full exercise  of  this Warrant (without regard to the beneficial ownership limitations contained herein).

## APCX BREACHES THE AGREEMENTS

25.     Defendant breached the terms of the Note, SPA and the Warrant, by failing to maintain a reserve of shares in the amounts set forth in the Agreements, despite EMA's request, as of April 9, 2021.

26.     On June 14, 2021, EMA submitted a Notice of Conversion (the "June 14, 2021 Notice of Conversion"), seeking to convert a portion of the Note into 75,000 shares of APCX stock, as provided for in the relevant Agreements.

27.     On July 13, 2021, EMA submitted a Notice of Conversion (the "First July 1, 2021 Notice of Conversion"), seeking to convert a portion of the Note into 491,262 shares of APCX stock, as provided for in the relevant Agreements.

28.     On July 13, 2021, EMA submitted an additional Notice of Conversion (the "Second July 14, 2021 Notice of Conversion"), seeking to convert a portion of the Note into 990,791 shares of APCX stock, as provided in the relevant Agreements.

29.     On July 13, 2021, EMA submitted a Notice of Exercise (the "July 14, 2021 Notice of Exercise"), seeking to exercise its right under the Warrant to purchase a certain number of shares, as provided for in the Warrant.

30.     Defendant did not deliver any shares, and failed to honor, the June 14, 2021 Notice of Conversion, the First July 13, 2021 Notice of Conversion, the Second July 13, 2021 Notice of Conversion, and the July 13, 2021 Notice of Exercise.

31.     Moreover, Defendant repudiated the Agreements, and actively interfered with each Notice of Conversion and each Notice of Exercise by objecting to the issuance of shares and by obtaining and sending to the Transfer Agent a bogus letter from an attorney that purported to claim

that the transaction was "void" and "illegal", and that, therefore, Defendant was conveniently excused from performing the Agreements.

32.     Defendant further stated that it would not perform the Agreements, claiming that the Agreements were "void" and "illegal".

33.     As a result of its actions, Defendant was sent a notice that one or more event of default had occurred under the terms of the Agreements.

34.     Section 3.2 of the Note provides for a breach in the event that:

The Borrower fails to reserve the Reserved Amount under this Note at all times for the Holder, issue shares of Common Stock to the Holder (or announces or threatens in writing that it will not honor its obligation to do so at any time following the execution hereof or) upon exercise by the Holder of the conversion rights of the Holder in accordance with the terms of this Note, fails to transfer or cause its transfer agent to transfer (issue) (electronically or in certificated form) any certificate for shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, the Borrower directs its transfer agent not to transfer or delays, impairs, and/or hinders its transfer agent  in transferring (or  issuing) (electronically or  in certificated  form) any certificate for shares of Common Stock to be issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, or fails to remove (or directs its transfer agent  not to  remove or impairs, delays, and/or hinders its transfer agent from removing) any restrictive  legend (or to withdraw any stop transfer instructions in respect thereof) on any certificate for any shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note (or makes any written announcement, statement or threat that it does not intend to honor the obligations described in this paragraph)… It is an obligation of the Borrower to remain current in its obligations to its transfer agent. It shall be an event of default of this Note, if a conversion of this Note is delayed, hindered or frustrated due to a balance owed by the Borrower to its transfer agent…

35.     Likewise, Section 5 of the SPA provides that

Upon receipt of a duly executed Notice of Conversion or Exercise Notice, the Company shall issue irrevocable instructions to its transfer agent to issue certificates, registered in the name of the Purchaser or its nominee, for the Conversion Shares and/or Warrant Shares in such amounts as specified from time to time by the Purchaser to the Company upon conversion of the Note or exercise

of the Warrant, or any part thereof, in accordance with the terms thereof (the "Irrevocable Transfer Agent Instructions").

36.    Section 3.16 of the Note provides as follows:

Cross-Default. Notwithstanding anything to the contrary contained in this Note or the other related or companion documents, a breach or default by the Borrower of any covenant or other term or condition contained in any of the Other Agreements, after the passage of all applicable notice and cure or grace periods, shall, at the option of the Holder, be considered a default under this Note and the Other Agreements, in which event the Holder shall be entitled (but in no event required) to apply all rights and remedies of the Holder under the terms of this Note and the Other Agreements by reason of a default under said Other Agreement or hereunder.

37.    Section 5(d) of the Warrant provides as follows:

Except and to the extent as waived or consented to by the Holder, the Company shall not by any action, including, without limitation, amending its certificate of incorporation or through any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms of this Warrant, but will at all times in good faith assist in the carrying out of all such terms and in the taking of all such actions as may be necessary or appropriate to protect the rights of Holder as set forth in this Warrant against impairment…

38.    Section 3.3 and 3.4 of the Note further provide for an event of default for each breach of a covenant, representation, or warranty made by APCX in connection with the Agreements.

39.    Based on the foregoing events, APCX's failure to honor EMA's Notices of Conversion and other actions and omissions has given rise to one or more "Event of Default" pursuant to the terms the Note. In addition thereto, APCX's conduct has caused multiple "Events of Default" to occur.

40.    Section 8 of the Note outlines the negotiated-for and agreed-upon remedies for the differing Events of Default.  Among other things, EMA is permitted to enforce any and all of plaintiff's rights under the Note and SPA, or otherwise as permitted by law.

41.     Page 1 of the Note provides that: "Any amount of principal or interest on this Note which is not paid when due shall bear interest at the rate of twenty-four (24%) per annum from the due date thereof until the same is paid ("Default Interest")."

42.     Due to APCX's persistent and willful failure to remedy its various breaches, as of filing the instant action, default interest has been accruing at a rate of 24%.

43.     Section 3.16 of the Note provides that, in the event of default, "all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and expenses, of collection, and the Holder shall be entitled to exercise all other rights and remedies available at law or in equity."

44.     EMA has been, and continues to be, irreparably harmed by APCX's failure to honor the Notices of Conversion, Notice of Exercise, and failure to maintain a reserve.

45.     Damages from APCX's failure to deliver the shares are inherently uncertain and difficult to calculate.   Since the parties entered in the Agreements, APCX's Stock price has fluctuated widely.

46.     Thus, the timing of conversions and sale of stock would be essential to the determination of damages.  Because it is difficult to discern precisely when EMA would have sold the converted shares, and how many it would sell had the conversion been honored, calculating its losses is difficult.

47.     All notices and prerequisites to bringing this action, if any, including notices of default, have been complied with or were waived.

**FIRST CLAIM FOR RELIEF**
**(<u>SPECIFIC PERFORMANCE</u>)**

48.     EMA realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

49.     The agreements between plaintiff and defendant are valid agreements.

50.     EMA substantially performed all portions of the agreements that were EMA's obligation to perform, except for those obligations for which performance was rendered impossible by virtue of defendant's breach.   Among other things, EMA's primary obligation under the various agreements was to fund the purchase of the Note in accordance with the terms of the various agreements, which EMA performed.

51.     Pursuant to the Note, SPA, Warrant, and related agreements, APCX is obligated to deliver shares of APCX Common Stock pursuant to the terms of the Agreements, as well as to provide with the transfer agent the necessary board resolutions sufficient to enable EMA to sell the shares publicly without restriction.

52.      Despite its obligation to do so, APCX has refused and failed to deliver said shares of stock to EMA.

53.     APCX has further failed to establish and increase the share reserve in the amounts required by the various agreements between the parties.

54.     As a result of such failure and refusal by APCX, EMA has suffered damages.

55.      EMA has no adequate remedy at law.

56.     In the absence of injunctive relief and specific performance, EMA will suffer irreparable harm.

57.     EMA requests, therefore, that the Court enter an order requiring APCX to specifically perform the relevant agreements, including the SPA, Note, Warrant, and letter to transfer agent, and to deliver immediately to EMA the shares of its Common Stock pursuant to

each Notice of Conversion and Notice of Exercise submitted, and to establish and increase the share reserve, as well as to provide EMA with the necessary resolutions, become current in its require SEC filings to the extent it is not, and to take whatever steps necessary (as per the terms of the Agreements), sufficient to enable EMA to sell the shares publicly without restriction.

**SECOND CLAIM FOR RELIEF**
**(<u>BREACH OF CONTRACT</u>)**

58.     EMA realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

59.     The Note, SPA, Warrant, and related agreements are valid and binding agreements.

60.      As set forth more fully above, APCX breached and repudiated the Agreements. APCX's numerous breaches and repudiations of the Agreements include, but are not limited to:

(i)     Failing to honor the Notices of Conversion submitted;

(ii)    Failing to honor the Notice of Exercise submitted.

(iii)   Failing to establish and maintain a reserve of shares in the amounts required by the Agreements;

(iv)    Failing to honor of the terms, conditions, representations and warranties of the SPA and Note;

(v)     Actively interfering with the performance of the Agreements; and

(vi)    Affirmatively stating that it would not perform the Agreements.

61.     APCX's conduct constitutes a breach of, and default under, the terms of the Note, SPA, Warrant, and related agreements.

62.     EMA has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

63.     APCX's breach and default are governed by Delaware law under the terms of the Note.

64.      EMA is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of principal in the sum $2,750,00.00, including without limitation the balance of any portion of the Note and Warrant that ultimately is not converted into shares, along with default interest, liquidated damages, and damages as provided for in the Note, SPA, Warrant and by law.

### THIRD CLAIM FOR RELIEF
### (PERMANENT INJUNCTION)

65.     EMA realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

66.     §4.10 of the Note provides:

Borrower acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or threatened breach by the Borrower of the provisions of this Note, that the Holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required.

67.     Likewise, Section 5(h) of the Warrant provides that: The Company agrees that monetary damages would not be adequate compensation for any loss incurred by reason of a breach by it of the provisions of this Warrant and hereby agrees to waive and not to assert the defense in any action for specific performance that a remedy at law would be adequate."

68.     Pursuant to its obligations under the relevant agreements, APCX is obligated to deliver shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions furnished by EMA, sufficient to enable EMA to sell the shares publicly without restriction.

69.     Despite its obligation to do so, APCX has failed and refused to deliver said shares of stock to EMA as required by each of the Notice of Conversion and Notice of Exercise and requests for shares under the various Agreements.

70.     Though required to under the terms of the Note, SPA, and Warrant, APCX has failed to deliver the required shares and failed to establish and maintain a reserve of shares in the amounts required by the Agreements, and has failed to honor, and affirmatively interfered with, the Notices of Conversion and Notice of Exercise.

71.     As a result of such refusal by APCX, EMA has suffered damages.

72.     EMA has no adequate remedy at law.

73.      In the absence of injunctive relief, EMA will suffer irreparable harm.

74.     Additionally, APCX consented to an injunction when entering into the Note, SPA and Warrant and/or agreed that a remedy at law would be inadequate.

75.      EMA requests, therefore, that the Court enter an order enjoining APCX from interfering with the performance of the Agreements, including with any Notice of Conversion and Notice of Exercise, and requiring APCX to deliver the shares of stock as called for in the relevant agreements in response to any Notice of Conversion and Notice of Exercise, including in the future, and to increase and maintain a reserve of shares in the amounts required in the Agreements.

**FOURTH CLAIM FOR RELIEF**
**(COSTS, EXPENSES & ATTORNEYS FEES)**

13

76.     EMA realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

77.     In accordance with the agreements between the parties, APCX agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by EMA in collecting any amount under the Note or breach of the Agreements.

78.     Section 4.5 of the Note states, "If default is made in the payment of this Note, the Borrower shall pay the Holder hereof costs of collection, including reasonable attorneys' fees."

79.     Therefore, EMA is entitled to an award against APCX for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff EMA seeks judgment against Defendants as follows:

i.      On the First Claim for Relief, EMA requests that the Court enter an Order requiring APCX to specifically perform the relevant agreements, including the SPA, Note, Warrant, and letter to transfer agent, and to deliver immediately to EMA the shares of its Common Stock pursuant to each Notice of Conversion and Notice of Exercise submitted, and to establish and increase the share reserve, as well as to provide EMA with the necessary resolutions, become current in its require SEC filings to the extent it is not, and to take whatever steps necessary (as per the terms of the Agreements), sufficient to enable EMA to sell the shares publicly without restriction.

ii.     On all Second Claim for Relief, for damages in an amount to be determined, but in any event in excess of $2,750,000.00; and

iii.    On the Third Claim for Relief, for the issuance of an injunction enjoining APCX from interfering with the performance of the Agreements, including with any Notice of Conversion

and Notice of Exercise, and requiring APCX to deliver the shares of stock as called for in the relevant agreements in response to any Notice of Conversion and Notice of Exercise, including in the future, and to increase and maintain a reserve of shares in the amounts required in the Agreements; and

iv.  On the Fourth Claim for Relief for an award of EMA's costs and expenses in prosecuting this action, including reasonable legal fees;

v.  For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated: July 14, 2021
    New York, New York

LAW OFFICE OF JEFFREY FLEISCHMANN PC
By: /s/ Jeffrey Fleischmann
    Jeffrey Fleischmann, Esq.

*Attorneys for Plaintiff EMA Financial, LLC*

150 Broadway, Suite 900
New York, N.Y. 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com